UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
MARISA TRACHTENBERG,                                         :   **MEMORANDUM**
                                                             :   **DECISION AND ORDER**
              Plaintiff,   :
                                                             :   14 Civ. 1945 (BMC)
           - against -                      :
                                                             :
FAILEDMESSIAH.COM and SHMAYRA                                :
ROSENBERG,                                                   :
                                                             :
              Defendants.  :
------------------------------------------------------------ X

**COGAN**, District Judge.

    Plaintiff Marisa Trachtenberg is suing Failedmessiah.com ("Failed Messiah") and Scott "Shmayra"[1] Rosenberg for defamation, negligence, and intentional infliction of emotional distress ("IIED"). Defendants removed this case from the Queens County Supreme Court based on diversity jurisdiction and have moved to dismiss (a) the defamation claim for lack of personal jurisdiction, failure to state a claim, and pursuant to New York Civil Rights Law § 74 and C.P.L.R. § 3016(a); and (b) the negligence and IIED claims for failure to state a claim.

    I find that personal jurisdiction is lacking as to the defamation claim, and the negligence and IIED claims fail to state a claim. Defendant's motion to dismiss [11] is therefore granted.

---

[1] Based on Rosenberg's affidavit, this is apparently a misspelling of "Shmarya," Rosenberg's Hebrew given name.

**BACKGROUND**

Plaintiff is a New York resident who lives in Queens. Defendant[2] is a Minnesota resident who maintains Failed Messiah as an online source for news on the Orthodox Jewish community.

On August 27, 2013, defendant posted an article on Failed Messiah entitled "5 Towns Alleged Child Sex Abuse Arrest." The original two-line article stated that "Marisa Trachtenberg from the Five Towns area has recently been arrested for allegedly sexually abusing a very young child. I'm told she worked in a number of Torah-Umesora-linked preschools, and that there could be many more potential victims."[3] Morah Leah Preschool terminated plaintiff shortly after the article was published, and plaintiff alleges that she "los[t] her career and any corresponding side work."

Plaintiff had indeed been charged with a crime; however, the charges were dropped immediately after arraignment.[4] Furthermore, her alleged victim was fifteen years old, which is older than the preschoolers she cared for professionally. Moreover, she did not work in "a number of Torah-Umesora-linked schools" (a particular Orthodox Jewish association of schools); she only worked at one. Finally, there is no evidence that, in fact, there were any other "potential victims."

---

[2] Failedmessiah.com is the domain name of the website Rosenberg operates. A domain name is a piece of property, and not a legal entity subject to suit *in personam*. See, e.g., Porsche Cars N. Am., Inc. v. Porsche.net, 302 F.3d 248 (4th Cir. 2002) (*in rem* proceeding against 128 domain names); cf. Blumenthal v. Drudge, 992 F. Supp. 44 (D.D.C. 1998) (defamation suit brought against internet journalist Matt Drudge – but, notably, not the domain name of his website, www.drudgereport.com – after he published scandalous claims there). Although plaintiff initially alleged that Failedmessiah.com is a corporation, she does not challenge Rosenberg's contention that Failedmessiah.com is not a legal entity. This decision will therefore refer to Rosenberg as the sole defendant.

[3] Defendant later updated the article on January 24, 2014, noting that, "[t]he alleged victim was apparently a teenage girl."

[4] The complaint alludes to "the charges brought against the plaintiff" without specifying what charges she faced. The top charge appears to have been misdemeanor forcible touching in violation of N.Y. Penal L. § 130.52.

## DISCUSSION

**I. Personal Jurisdiction over the Defamation Claim**

Defendant moves to dismiss the defamation claim under Federal Rule of Civil Procedure 12(b)(2). When opposing such a motion, plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. See Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). In ruling on the motion, a district court may consider supporting affidavits in addition to the pleadings. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Furthermore, "where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor . . . ." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993).

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). The tortious-conduct provisions of New York's long-arm statute explicitly disallow jurisdiction over defamation claims against non-domiciliaries. N.Y. C.P.L.R. § 302(a)(2)-(3). Although this suggests a "'strong argument[] that the legislature intended to bar use of the long-arm statute in defamation cases,'" New York courts will entertain defamation cases against non-domiciliaries so long as jurisdiction exists under C.P.L.R. § 302(a)(1), the long-arm statute's catch-all provision. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 245-46 (2d Cir. 2007) (quoting Vardinoyannis v. Encyclopaedia Britannica, Inc., No. 89 Civ. 2475, 1990 WL 124338, at *6 n.3 (S.D.N.Y. Aug. 20, 1990)).

To satisfy § 302(a)(1), plaintiff must allege that "(i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business." Johnson v. Ward, 4 N.Y.3d 516, 519, 829 N.E.2d 1201, 1202, 797 N.Y.S.2d 33, 34 (2005). A transaction in

3

this context is generally "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." McKee Elec. Co. v. Rauland–Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967) (importing the definition of "minimum contacts" as articulated in Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228 (1958)).

In defamation cases, however, "New York courts construe 'transacts any business within the state' more narrowly . . . than they do in the context of other sorts of litigation." Best Van Lines, 490 F.3d at 248 (quoting N.Y. C.P.L.R. § 302(a)(1)). In cases involving allegedly defamatory content published by an out-of-state media outlet, courts have found transactions only when the content in question was based on research physically conducted in New York. See, e.g., Montgomery v. Minarcin, 263 A.D.2d 665, 693 N.Y.S.2d 293 (3d Dep't 1999) (finding personal jurisdiction over defendant, a reporter, who based TV news report on six weeks of research conducted in New York); Legros v. Irving, 38 A.D.2d 53, 327 N.Y.S.2d 371 (1st Dep't 1971) (finding personal jurisdiction where "virtually all the work attendant upon publication" of the book at issue occurred in New York). This in-state research requirement is not *de minimis*. Indeed, the New York Court of Appeals recently declined to find a transaction in a case in which the president of the non-domiciliary defendant organization posted allegedly defamatory material about a New York plaintiff on the organization's out-of-state website, even though she based the posts on two recent (if very brief) trips to New York, during which she met with plaintiff and wrote plaintiff a personal check. See SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n, 18 N.Y.3d 400, 963 N.E.2d 1226, 940 N.Y.S.2d 525 (2012).

Here, plaintiff argues that defendant transacted in New York when he "'projected his statements into New York and targeted New Yorkers." Rephrasing her theory of the standard

4

slightly, she later asserts that he transacted in New York because his "internet activity [was] expressly targeted at or directed to" New York, relying on Deer Consumer Prods., Inc. v. Little, 35 Misc.3d 374, 938 N.Y.S.2d 767 (Sup. Ct. N.Y. Co. 2012), and Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349 (S.D.N.Y. 2009). Although defendant asserts that he operates Failed Messiah (including publishing this particular article) for a global audience, plaintiff argues that he "targets" New York because of (1) the large fraction of the global Jewish population that lives in New York (on the theory that, as the author of a website tracking the Orthodox Jewish community, defendant had to know the article would be read in New York); (2) defendant's "nonchalant" reference to "5 Towns" (because it implies he intended the article for New York readers who would need no explanation that Five Towns is a community in New York); and (3) the fact that one-third of Failed Messiah's front-page articles on May 22, 2014 concerned Jewish communities in New York (further implying defendant's expectation of New York readers).

Plaintiff incorrectly relies on Best Van Lanes, Capitol Records,[5] and Deer to support her "targeting" definition of transaction. Although New York could let its courts exercise "impact-" or "effects-only" jurisdiction, see Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984) (holding that California courts could hear plaintiff's defamation suit against an out-of-state magazine editor without violating Due Process, in light of the impact the magazine's significant in-state circulation had on plaintiff's reputation there), it has chosen not to do so; § 302(a)(1)'s transaction requirement sets a decidedly stricter test for defamation cases. See Best Van Lines, 490 F.3d at 244-45.

---

5 Capitol Records is inapposite because it defines transaction in a copyright context – again, defamation has a unique transaction test. See Best Van Lines, 490 F.3d at 248.

5

In Best Van Lines, for instance, the Iowa defendant maintained a website dedicated to reviewing household movers and posted assertions that plaintiff, a New York-based moving company, conducted moves illegally. These assertions certainly "targeted" New York in the sense that they were mainly relevant to and likely to be read by plaintiff's potential customers in New York. Their impact was probably felt most in New York, in the form of the business plaintiff subsequently lost (i.e., the New Yorkers who would have hired plaintiff to conduct their moves had they not read defendant's posts). This impact and targeting notwithstanding, the Best Van Lines Court found no in-state transaction sufficient to exercise jurisdiction, noting that New York courts have concluded that "the posting of defamatory material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statute." Id. at 250.

Plaintiff is correct that Deer states that the transaction test is met if "a nonresident's Internet activity [is] expressly targeted at or directed to" New York. Deer, 35 Misc.3d at 384, 938 N.Y.S.2d at 777 (emphasis omitted). Just days after the decision in Deer, however, the New York Court of Appeals's SPCA decision confirmed that the Second Circuit properly interpreted New York law in Best Van Lines.[6] As in Best Van Lines, the out-of-state defendant in SPCA (an Ohio non-profit) posted assertions about the quality of services provided in New York by plaintiff (a New York operator of animal shelters) on the special-interest website it ran (the American Working Collie Association homepage). See SPCA, 18 N.Y.3d at 402-03, 963 N.E.2d at 1227-28, 940 N.Y.S.2d at 526-27. Once again, such posts did not constitute an in-state transaction, even though the posts' probable purpose and effect was to warn New Yorkers about

---

6 SPCA was decided on February 9, 2012; Deer was decided on January 27, 2012. In any event, Deer does not purport to redefine the transaction test for defamation jurisdiction; it recognizes Best Van Lines and the Appellate Division's SPCA decision (which the Court of Appeals would soon affirm) as sources for the controlling definition. See Deer, 35 Misc.3d at 384, 938 N.Y.S.2d at 776. Moreover, Deer found no transaction in the defamation case it resolved. See id. at 385, 938 N.Y.S.2d at 778.

6

plaintiff's conduct in their community. Id. at 405, 963 N.E.2d at 1229, 940 N.Y.S.2d at 528. Therefore, even if the Five Towns article was intended to warn the Orthodox Jews of New York about plaintiff, SPCA makes clear that such "targeting" is not a jurisdiction-conferring transaction under C.P.L.R. § 302(a)(1).

In addition to her targeting theory, plaintiff also claims that, because defendant relied upon a New York source to write the Five Towns article, he transacted business in-state under the Legros "virtually all the work attendant upon publication" standard. In Legros, however, the defendant actually conducted research in New York, and negotiated a contract with his publisher there. Basing an article on information received out-of-state from a New York source is simply not the same as coming to New York to conduct research.

Defendant admits that he confirmed his source's information by logging on to Webcrims, the New York State court system's website, from his computer in Minnesota. Even if this counts as in-state research, however, it is still less in-state research than the amount of research that proved insufficient for personal jurisdiction in SCPA (two physical trips to New York, during which defendant's president met with plaintiff).

Plaintiff's best candidate for a covered "transaction" is defendant's contractual relationship with KelseyMedia, a New York-based advertising agency that sold ads that ran on Failed Messiah. Defendant admits that KelseyMedia at one point sold ads that ran on the site, but claims he parted ways with the agency prior to posting the Five Towns article. However, there is no need to determine the timeline of defendant's dealings with KelseyMedia. Even assuming that plaintiff's version is correct and these dealings qualify as an in-state transaction, § 302(a)(1) requires that "the cause of action ar[i]se from that transaction." Johnson, 4 N.Y.3d at 519, 829 N.E.2d at 1202, 797 N.Y.S.2d at 34. Put differently, "some articulable nexus [must

7

exist] between the business transacted and the cause of action sued upon;" that is, even if defendant committed purposeful acts in-state, they must be substantially related to the cause of action. McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981). In a defamation context, this means that the allegedly defamatory statements must refer to the jurisdiction-conferring transaction. See Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 522 N.E.2d 1027, 527 N.Y.S.2d 729 (1988); Copp v. Ramirez, 62 A.D.3d 23, 874 N.Y.S.2d 52 (1st Dep't 2009), leave to appeal denied, 12 N.Y.3d 711, 909 N.E.2d 1235, 882 N.Y.S.2d 397 (2009); GTP Leisure Prods., Inc. v. B-W Footwear Co., Inc., 55 A.D.2d 1009, 391 N.Y.S.2d 489 (4th Dep't 1977). Here, plaintiff does not allege a connection between the content of the Five Towns article and the fact that Kelsey Media's offices happen to be located in New York. This sort of "merely coincidental" nexus does not suffice to confer jurisdiction. See Licci v. Lebanese Canadian Bank, 20 N.Y.3d 327, 340, 984 N.E.2d 893, 901, 960 N.Y.S.2d 695, 703 (2012) (citation omitted).

For the foregoing reasons, § 302(a)(1) does not grant New York courts jurisdiction over this defamation claim. This obviates an inquiry into whether exercising jurisdiction would violate defendant's Due Process rights. See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); SPCA, 18 N.Y.3d at 406, 963 N.E.2d at 1230, 940 N.Y.S2d at 529.

Finally, plaintiff's request for limited discovery jurisdictional discovery under C.P.L.R. § 3211(d) is unwarranted. If a plaintiff makes a "sufficient start" toward meeting her jurisdictional burden, a district court has discretion to grant her limited jurisdictional discovery "to prove other contacts and activities of the defendant in New York as might confer jurisdiction." Peterson v. Spartan Indus., Inc., 33 N.Y.2d 463, 467, 310 N.E.2d 513, 515, 354 N.Y.S.2d 905, 908 (1974). For instance, one recent decision allowed such discovery when defendant conceded that he had

physically conducted research in New York, as it was necessary to determine whether the extent of the research exceeded the minimum threshold established in SPCA. See Biro v. Nast, 11 Civ. 4442, 2012 WL 3262770, at *8 (S.D.N.Y. Aug. 10, 2012). Here, however, plaintiff has a problem of kind, not degree – she needs new jurisdictional theories, not more evidence substantiating the theories she has already advanced. Even the best evidence she could get in further discovery (an affidavit from defendant admitting he intended his article to be read by the New York Orthodox Jewish community, relied on a New York source, used Webcrims, and had an ongoing contractual relationship with KelseyMedia) would make no difference in the jurisdictional outcome for the reasons already discussed.

## II. Negligence Claim

To state a negligence claim, plaintiff must allege: (1) a duty owed to plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. See Skidd v. JW Marriot Hotels & Resorts, 06 Civ. 1554, 2010 WL 2834890, at *4 (S.D.N.Y. July 8, 2010). Plaintiff alleges causation and damages, but not duty or breach.

Additionally, plaintiff's failure to plead that defendant owed a duty to plaintiff and that defendant breached that duty strongly suggests that plaintiff's negligence claim is duplicative of her defamation claim. Here, the conduct plaintiff alleges – that defendant published a false article about her – falls well within the tort of defamation; therefore, defamation, and not negligence, is where plaintiff's claim appropriately lies. See Sweeny v. Prisoners' Legal Servs. Of New York, Inc., 146 A.D.2d 1, 7, 538 N.Y.S.2d 370, 374 (3d Dep't 1989); see also Chao v. Mount Sinai Hosp., No. 10 Civ. 2869, 2010 WL 5222118, at *11 (S.D.N.Y. Dec. 17, 2010); Themed Restaurants, Inc. v. Zagat Survey, LLC, 21 A.D.3d 826, 827, 801 N.Y.S.2d 38, 40 (1st Dep't 2005).

Finally, plaintiff seems to concede that she has not adequately pled a negligence claim, as her opposition does not even respond to defendant's contention that she failed to state one. See Rosenblatt v. City of New York, No. 05 Civ. 5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007). Therefore, the motion to dismiss for failure to state a negligence claim is granted.

**III. IIED Claim**

To state an IIED claim, plaintiff must allege (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial possibility of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. See Grant v. Commc'ns Workers of Am., Local 1101, 13 Civ. 7917, 2014 WL 3439670, at *3 (S.D.N.Y. July 15, 2014). "Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 331 (S.D.N.Y. 2010).

Plaintiff's theory is that defendant knowingly misreported her alleged victim as a "very young child" in order to intentionally cause her emotional distress. Although describing a fifteen-year-old as a "very young child" may be technically incorrect, it also arguably is correct and therefore surely cannot constitute conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" as to state a claim for IIED. Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). This claim also fails because the complaint alleges emotional distress, but not severe emotional distress. Plaintiff's opposition brief asserts that she suffered severe emotional distress, but an opposition cannot be used to amend a complaint. See Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

In addition to these deficiencies, New York courts have rejected IIED claims where, as here, "the conduct complained of falls well within the ambit of other traditional tort liability."

10

Levin v. McPhee, 917 F. Supp. 230, 242 (S.D.N.Y. 1996), aff'd, 119 F.3d 189 (2d Cir. 1997) (internal quotation marks omitted). This is because "recovery on a theory of intentional infliction of emotional distress for the emotional distress caused by publication of a libel has been held to be duplicative and more properly addressed within the context of a libel suit." Id. Accordingly, defendant's motion to dismiss is granted with respect to plaintiff's IIED claim.

## IV. Sanctions

Finally, I deny defendant's motion to impose sanctions on plaintiff. Plaintiff presented colorable arguments that were nowhere near so deficient as to warrant sanctions.

## **CONCLUSION**

Defendant's motion to dismiss is granted. The Clerk is directed to enter judgment dismissing the complaint.

**SO ORDERED.**

                                         Digitally signed by Brian M. Cogan
                                                                        U.S.D.J.

Dated: Brooklyn, New York
       August 29, 2014